IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

|  |  |  |
|---|---|---|
| In re:<br><br>Application of SERVOTRONICS, INC.,<br>for an Order Pursuant to 28 U.S.C. §1782<br>to Take Discovery for Use in a Foreign<br>Proceeding | x<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>x | Case No. 18-CV-7187 |

MEMORANDUM OF LAW IN SUPPORT OF
THE *EX PARTE* APPLICATION OF SERVOTRONICS
FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782
TO TAKE DISCOVERY FOR USE IN A FOREIGN PROCEEDING

This Memorandum of Law is submitted in support of the *ex parte* Application of SERVOTRONICS, INC. ("SERVOTRONICS") for an Order allowing it to serve a Subpoena *Duces Tecum* upon The Boeing Company ("Boeing") in order to collect documents and other materials that may be used in an arbitration proceeding pending in London, England ("London Proceeding"), and in which SERVOTRONICS is the Respondent, as more fully described below.

## SUBJECT MATTER JURISDICTION

Federal subject matter jurisdiction over this Application is established by 28 U.S.C. § 1331 in conjunction with the statutory requirements of 28 U.S.C. § 1782. *See United Company Rusal, PLC v. Trafigura A.G.,* No. 3:11 MC 17, 2011 WL 1045532(D. Conn. March 16, 2011) (right to discovery under Section 1782 is a right that exists solely pursuant to a federal statute and therefore arises under federal law).[1]

---

[1] The *Rusal* court observed that "every court that has expressed any view with regard to its jurisdiction to entertain a section 1782 application remained notably silent on any requirement that a basis, other than the federal statute itself, was necessary," (citing *In re Chevron Corp.,* 633 F.3d 153 (3d Cir. 2011); *Bayer v. Betachem, Inc.,* 173 F.3d 188, 189-90 (3d Cir. 1999); *In re Letters*

# BACKGROUND

A. **The Underlying Incident**

The claims underlying the London Proceeding arise out of a January 16, 2016 aircraft engine tail pipe fire that occurred in North Charleston, South Carolina. *See* Declaration of Akhil Shah QC ("Shah Decl.") submitted herewith, ¶¶ 8-11.[2] The Trent 1000 engine in question, individually identified by its Manufacturer's Serial Number ("S/N") as S/N 10353 (the "Engine"), was manufactured by Rolls-Royce and installed on the right side of a new Boeing 787-9 Dreamliner aircraft, individually identified as S/N ZB036 and United Kingdom Civil Aviation Authority Registration Number ("R/N") R/N G-VDIA (the "Aircraft"). The Aircraft had been sold but not yet delivered to Virgin Atlantic Airlines ("VAA").

At the time of the fire, the Aircraft was undergoing Customer Demonstration and Acceptance Flight Tests at Boeing's "campus" adjacent to the Charleston International Airport.

Applicant SERVOTRONICS manufactures aerospace component parts. Pursuant to a Long-term Agreement ("LTA") between Rolls-Royce and SERVOTRONICS, Applicant manufactured and shipped a Metering Valve Servo Valve ("MVSV"), individually identified as S/N 1230 and Part Number ("P/N") 77879618 (and hereinafter generally referred to as the "MVSV"), to Rolls-Royce in May 2015. The MVSV was installed in the Hydro-Mechanical Unit ("HMU") of the Engine which was installed on the Aircraft. During pre-delivery flights and ground tests conducted by Boeing and Rolls-Royce personnel, due to a manufacturing error in the MVSV, an unwanted wafer of metal became lodged in the MVSV affecting the fuel flow in the Engine. In

---

*Rogatory from Local Court of Ludwigsburg,* 154 F.R.D. 196, 199 (N.D. Ill. 1994); *In re Letters Rogatory from Supreme Court of Ontario,* 661 F. Supp. 1168, 1169 (E.D. Mich. 1987)).

[2] A confidentiality agreement precludes attachment of the Notice of Arbitration and Response. Applicant will submit them under seal if needed for adjudication.

response, the flight and ground crews engaged in troubleshooting of the Engine, which caused a tail pipe fire in the Engine. The fire resulted in damage to the Aircraft and Engine.

Boeing sought compensation for all alleged resulting damages from Rolls-Royce. Rolls-Royce and its insurers settled the claim without SERVOTRONICS's participation and then demanded indemnity from SERVOTRONICS, which rejected the demand.

**B.     Arbitration**

According to Clause 27.4 of the LTA, if the parties cannot resolve any disputes by negotiation or mediation:

> [T]he dispute shall be referred to and finally resolved by arbitration in Birmingham, England, under the rules of the Chartered Institute of Arbitrators, and these Rules are deemed to be incorporated by reference into this clause.

Attempts to mediate and settle the dispute were not successful and on September 18, 2018 Rolls-Royce served a Notice of Arbitration upon SERVOTRONICS. In it, Rolls-Royce seeks approximately $12.8 million from SERVOTRONICS on the alleged grounds that the defect in the MVSV caused the tail pipe fire.

In its Response, served on October 16, 2018, SERVOTRONICS denies all liability and maintains, *inter alia,* that numerous improper, inadequate, and incorrect actions and failures to act of Boeing and Rolls-Royce personnel constitute the legal cause of the damage and these acts and failures to act are the intervening and superseding causes of the tail pipe fire.

The parties have agreed to arbitration in London rather than Birmingham, England, as a matter of convenience.

### C. Evidence Sought from Boeing

After receiving the demand from Rolls-Royce for indemnification of all damage that Rolls-Royce and its insurers paid to Boeing and for all damages that Rolls-Royce alleged it suffered directly, SERVOTRONICS requested relevant documents and other materials from Rolls-Royce, including documents likely to be within Boeing's control, to prepare for mediation as mandated by the LTA. The documents and other materials sought in this proceeding have not been provided.

Through this Application, SERVOTRONICS requests information related to: (1) the sale and delivery of the Aircraft and Engine, which is relevant, *inter alia,* both to Boeing's legal liability for damages to its customer and with respect to Boeing's and Rolls-Royce's legal liability to each other, and therefore to the reasonableness of the settlement; (2) data readouts and recordings from the day of the event and all witnesses' statements, which are relevant to establishing their negligent acts, omissions, and causation; and (3) documents pertaining to Boeing's post-incident investigation, which are also relevant to the issues of its negligence and causation.[3]

A proposed Subpoena with Requests is attached as Exhibit "A" to the Affidavit of Richard H. Donohue ("Donohue Aff.") submitted concurrently.

## ARGUMENT

### A. 28 U.S.C. § 1782: In General

28 U.S.C. § 1782(a) provides in relevant part (emphasis added):

> The district court of the district in which ***a person resides or is found*** may order him to give his testimony or statement or to produce a document or other thing for ***use in a proceeding in a foreign...tribunal***. The order may be made...***upon the***

---

[3] SERVOTRONICS is seeking the depositions of at least three witnesses who participated in the troubleshooting of the Engine and were at that time reportedly Boeing employees. They do not appear to be officers, directors, or managing agents of Boeing and are not believed to reside within 100 miles of Chicago. Their testimony will be sought in separate Applications to Serve Subpoenas issuing from the proper court.

>*application of any interested person* and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court... To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure. A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege.

A discovery application under 28 U.S.C. § 1782 presents two inquiries: first, whether the district court is authorized to grant the request under Section 1782, and, if so, whether it should exercise its discretion to do so. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004); *Kulzer v. Biomet, Inc.,* No. 3:09-MC-275 CAN, 2009 WL 364276, (N.D. Ind. Oct. 29, 2009). Once the need for discovery is demonstrated, the burden shifts to the opposing litigant to demonstrate that allowing discovery sought, in whole or part, would disserve the statutory objectives of 28 U.S.C. § 1782. *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 633 F.3d 591, 597 (7th Cir. 2011); *see also Fleishmann v. McDonald's Corp.*, 466 F. Supp. 2d 1020, 1025-26 (N.D. Ill. 2006) (twin aims of Section 1782 are to provide efficient assistance to participants in international litigation and to encourage foreign nations by example to provide reciprocal assistance).

The portions italicized in the quoted text above pertain to "authorization." Relevant to this Application, they confer authority on this Court to grant this Application if:

(1) BOEING, from whom discovery is sought, "resides or is found" in this District;

(2) The discovery is for "use in a proceeding" in a "foreign tribunal"; and,

(3) SERVOTRONICS, the applicant, is an "interested person."

*See Fleischmann,* 466 F. Supp. 2d at 1026 (although the court considered "use in a proceeding" and "foreign tribunal" as separate elements for a total of four statutory requirements); *accord Kleimar N.V. v. Benxi Iron and Steel America, Ltd.,* No. 17-CV-01287, 2017 WL 3386115 (N.D.

Ill. Aug. 7, 2017).

The further "discretionary" factors were identified by the U.S. Supreme Court as follows:

(1) Whether the party from whom discovery is sought is a participant in the foreign proceeding;

(2) The nature of the foreign tribunal, the character of the foreign proceedings, and the receptivity of relevant foreign authorities to U.S. federal court assistance;

(3) Whether the requests conceal an attempt to circumvent foreign proof-gathering practices; and,

(4) Whether the requests are unduly intrusive or burdensome.

*Intel,* 542 U.S. at 264-65.

As discussed below, the statutory requirements are met and Applicant SERVOTRONICS respectfully submits that the discretionary factors also weigh in favor of allowing service of the Subpoena.

**B.    This Application Satisfies the Statutory Requirements**

  **1.    Boeing "Resides or Is Found" in this District**

There are open questions concerning the scope of the "resides or is found" requirement—for instance, whether long-arm "specific" jurisdiction standards may be applied—but there is no question that a corporation "resides or is found" in a district where it is subject to "general" personal jurisdiction because its corporate headquarters is located there.[4] *See Bristol Myers Squibb*

---

[4] The court in *In re Sargeant,* 278 F. Supp. 3d 814, 820-21 (S.D. N.Y. 2014) required "at least" general jurisdiction to exist over a person to be subpoenaed, while the court in *Australia & New Zealand Banking Group v. APR Energy Holding* suggested that service might be allowed if the non-party's activities in the forum were closely related to the discovery sought. 17-MC-00216, 2017 WL 3841874 (S.D.N.Y. Sept. 1, 2017), *appeal withdrawn,* 2018 WL 1611651 (2d Cir. March 2, 2018). In *In re Edelman,* 295 F.3d 171, 179 (2d Cir. 1990), the court was satisfied with in-state service on foreign corporation.

*Co. v. Superior Court,* 137 S. Ct. 1773 (2017); *BNSF Railway Co. v. Tyrrell,* 137 S. Ct. 1549 (2017); *Daimler A.G. v. Bauman,* 571 U.S. 117, 138-39 (2014); *Goodyear Dunlop Tires Operations S.A. v. Brown*, 564 U.S. 915, 919 (2011) (all holding that a corporation is "at home" and amenable to jurisdiction in the state where it is incorporated and, if different, the place where it maintains its principal place of business); *see also Hertz Corp. v. Friend,* 559 U.S. 77, 92-93 (2010) (a corporation's principal place of business is where its corporate headquarters are located).

Boeing's international corporate headquarters is located within this District at 100 North Riverside Plaza in Chicago and it therefore "resides and is found" in this District.

2.  **Discovery for "Use in a Proceeding" in a "Foreign Tribunal"**

The documents and materials SERVOTRONICS seeks from Boeing are highly relevant to SERVOTRONICS' defenses in the London Proceedings, in particular its contentions that the acts and omissions of Boeing and Rolls-Royce constitute the legal cause of the damage to the Engine and Aircraft as intervening and superseding causes of the fire, and to the reasonableness of the Boeing/Rolls-Royce settlement. Such evidence will be admissible in the London Proceedings and is not barred by any applicable law or the CIArb Rules. *See* Shah Decl., ¶¶ 11 & 18.

The Seventh Circuit appellate court has not ruled that Section 1782 does not apply to private arbitrations: it has expressed a relatively broad view of Section 1782, but has not definitively ruled on the issue. See *Heraeus Kulzer*, 633 F.3d at 594-596 (reversing district court's denial of Section 1782 application in connection to German proceedings); *GEA Group AG v. Flex-N-Gate Corp.,* 740 F.3d 411, 419 (7th Cir. 2014) (describing Section 1782's relevance to foreign arbitration proceedings as "uncertain"). The Seventh Circuit appellate court has avoided following the minority of federal circuit courts which have held that a private arbitration does not qualify as a "proceeding

7

in a tribunal" for Section 1782 purposes. *Id.* [5]

While the most recent opinions on the subject in the Northern District of Illinois have granted Section 1782 applications for private arbitrations, the Seventh Circuit Appellate Court has not resolved apparent inconsistencies on this subject in the Seventh Circuit district court opinions. *Compare Kleimar v. Benxi Iron and Steel America, Ltd.,* No. 17-CV-01287, 2017 WL 3386115 (N.D. Ill. Aug. 7, 2017) (granting application) *with In re Norfolk S. Corp. Arbitration*, 626 F. Supp. 2d 882, 885 (N.D. Ill. 2009) (denying application); *see also In re Winning (HK) Shipping Co. Ltd.*, No. 09-22659-MC, 2010 WL 1796579,*8 (S.D. Fla. Apr. 30, 2010); *In re Roz Trading Ltd.*, 469 F. Supp. 2d 1221, 1228 (N.D. Ga. 2006) (all in general accord with *Kleimar*); *but see In re TJAC Waterloo, LLC,* No. 3:16-MC-9-CAN, 2016 WL 1700001, *1-2 (N.D. Ind. 2016); *In re Operadora DB Mexico S.A.,* No. 6:09-CV-383, 2009 WL 2423138 (M.D. Fla. Aug. 4, 2009); *La Comision Ejecutiva Hidroelecctrica Del Rio Lempa v. El Paso Corp.*, 617 F. Supp. 2d 481, 483, 485 (S.D. Tex. 2008), *aff'd,* 341 F. App'x 31 (5th Cir. 2009) (all in general accord with *Norfolk*); *cf. GEA Group AG v. Flex-N-Gate Corp.,* 740 F.3d 411, 419 (7th Cir. 2014) (describing Section 1782's relevance to foreign arbitration proceedings as "uncertain"); *In re Finserve Group Ltd.*, No. 4:11-MC-2044, 2011 WL 5024264, *7-8 (D.S.C. Oct. 20, 2011) (questioning Section 1782's applicability to arbitration but denying application without prejudice to further briefing).

---

[5] The Eleventh Circuit discerned a "functionality test" in *Intel* and asked whether the foreign body: (1) acted as a first-instance decision maker and adjudicator; (2) permitted the gathering and submission of evidence; (3) has authority to determine liability and impose penalties; and, (4) issued decisions subject to judicial review. *Consorcio Ecuatoriano de Telecomunicaciones S.A. v. JAS Forwarding (USA), Inc. ("Consorcio I"),* 685 F.3d 987, 994-95 (11th Cir. 2012). In response to a petition for rehearing *en banc,* the court vacated the opinion but without rejecting the functionality test factors: it acknowledged the record was insufficiently developed for detailed review but further concluded the imminence of litigation made the dispute over arbitration largely immaterial. *See "Consorcio II,"* 747 F.3d 1262 (11th Cir. 2014). Not all courts have recognized the "functionality test." *See, e.g., In re Dubey,* 949 F. Supp. 2d 990, 994 n. 3 (C.D. Cal. 2013).

In the *Intel* decision, the Supreme Court noted, in discussing how Section 1782 has broadened over the years, that Congress had defined "tribunal" as including "administrative and arbitral tribunals." *See Intel,* 542 U.S. at 248-49.[6] Congress introduced the word "tribunal" to ensure that "assistance is not confined to proceedings before conventional courts," but extends also to "administrative and quasi-judicial proceedings." *Id.* SERVOTRONICS furthermore agrees with the court in *Roz Trading* that arbitration proceedings are before a "tribunal" under both the widely accepted definition and "common usage" of that word.

Many federal district courts, including the Northern District of Illinois, have approved Section 1782 procedures in connection with arbitration when the arbitral decision is subject to judicial review. *See Kleimar*, No. 17-CV-01287, 2017 WL 3386115, Slip Copy at 6. Any decision in the London Proceeding will be subject to judicial review with respect to substantive jurisdiction issues and "serious irregularities," as mandated under the 1996 [U.K.] Arbitration Act. *See* Shah Decl., ¶¶ 14-15. The district court opinion in *Norfolk* inferred a requirement for judicial review on the "merits." 626 F. Supp. 2d at 886. However, the Supreme Court did not prescribe any "reviewability" requirement, and any such requirement would misconstrue the holding of the Supreme Court in *Intel.*

The arbitration in the London Proceedings more resemble a "tribunal" under Section 1782 than did the proceedings involved in the Supreme Court decision in *Intel.* The proceedings in *Intel* were initiated before the Directorate-General for Competition of the Commission of the European

---

[6] As discussed in *Intel,* before Section 1782 was enacted, judicial assistance was limited to proceedings where a foreign state had a direct interest. Section 1782 dispensed of this requirement when it was enacted in 1948 and allowed depositions in order to assist "pending civil actions" in foreign countries. "Pending civil actions" was replaced the next year with "pending judicial proceedings," and in 1964 depositions and other discovery were allowed in connection "proceedings"—pending or not—"in a foreign or international tribunal." A final 1996 amendment referenced criminal investigations. *See generally Intel,* 542 U.S. at 248-49.

9

Communities ("D-G Commission")—a body dissenting Justice Breyer described as closer to a "prosecuting attorney" than a "tribunal," as he understood the D-G Commission did not "adjudicate adversary proceedings on the basis of proofs and argument." 542 U.S. at 246, 270. Intel itself, opposing its competitor's Application for discovery, had argued Section 1782 was inapplicable because no "adjudicative proceeding" was "currently or even imminently on the Commission's agenda." *Id.* at 258. The Supreme Court disagreed. The Supreme Court recognized that the ever-broadening Section 1782 did not require a "current or imminent" proceeding, and here "a dispositive ruling by the Commission, reviewable by the European courts, [was] within reasonable contemplation," and the evidence sought was for "use" in such a proceeding. *Id.* at 259.

In short, the D-G Commission possibly was not a "tribunal," but its decision would be reviewed by one. Here, the London Proceedings will take place before a "tribunal" itself, acting as a court in the first instance, gathering and reviewing evidence and briefs submitted by the parties and then making its adjudication—an adjudication which in any event will be subject to judicial review for substantive jurisdiction and serious irregularities. *See* Shah Decl., ¶¶ 11-15.

This Application accordingly satisfies the requirement that the discovery be "for use in a proceeding in a foreign tribunal." *See Fleischmann*, 466 F. Supp. 2d at 1030 (documents discoverable under relevance standards of FRCP discovery rules satisfy "for use in" requirement of Section 1782).

3. **"Interested Person"**

SERVOTRONICS is an "interested party" for purposes of Section 1782 because it is the Respondent party in the foreign arbitration. *Intel,* 542 U.S. at 256-57; *In re Procter & Gamble,*

334 F. Supp. 2d 1112, 1113 (E.D. Wis. 2004). All of the statutory requirements of Section 1782 are satisfied in this case.

**C.     The Additional Discretionary Factors Weigh in Favor of Discovery**

The discretionary factors equally support SERVOTRONICS' Application. SERVOTRONICS accordingly and respectfully requests that this Court exercise its discretion in granting this *ex parte* Application allowing service of the Subpoena.

    **1.     Boeing Is Not a Party to the Arbitration**

Boeing is not a party to the English arbitration, and is therefore outside the power of the arbitrator(s) to compel production. "[W]hen the person from whom discovery is sought is a participant in the foreign proceeding...the need for § 1782(a) generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel,* 542 U.S. at 264; *accord Fleischmann,* 466 F. Supp. 2d at 1030-31. As noted previously, SERVOTRONICS had requested the production of documents, on a voluntary basis, from Rolls-Royce, in order to bring the indemnification dispute to an end via mediation. As part of these efforts, SERVOTRONICS assisted Rolls-Royce in its efforts to obtain documents from Boeing, but ultimately, SERVOTRONICS did not receive the necessary documents from either Rolls-Royce or Boeing.

Because Rolls-Royce has initiated arbitration proceedings, SERVOTRONICS now seeks the assistance of this District Court through this Application for the information necessary to its defense in the London Proceedings, where SERVOTRONICS will show that the claimed damages were proximately caused by Boeing and Rolls-Royce.

    **2.     The Nature of the Foreign Tribunal, Character of Foreign Proceedings,**

**and Receptivity of Foreign Authorities**

As explained in the preceding section, arbitration under the CIArb Rules is akin to proceedings in a court of first instance. The parties submit the equivalent of pleadings, trial briefs, evidence, and if necessary participate in a hearing. District courts have granted Section 1782 applications where discovery is sought for use in such plenary proceedings—including some arbitration proceedings, as discussed above—and evidence collected pursuant to U.S. discovery is readily admissible in English arbitration proceedings under CIArb Rules and English law. *See* Shah Decl., ¶¶ 14-15. Moreover, as the arbitration proceedings have just begun—SERVOTRONICS' English counsel estimates, based on his experience, that the hearing will not take place until July 2019 at the earliest. The parties have exchanged "pleadings" (the Notice and Response) in September-October 2018. The "trial briefs" (Statements of Claim and Defense) will not be due for months. The full arbitral panel has not been appointed.

3. **The Application Is Not an Attempt to Circumvent Foreign Proof-Gathering Practices**

SERVOTRONICS submits this Application for the production of documents in the interest of efficiency and to prepare its defense in a timely manner,. The CIArb Rules contemplate that the parties will engage in discovery and allow for the submission of documentary evidence. *see* Shah Decl. ¶14, No judicial or arbitral authority in the U.K. has rejected any effort by Applicant to obtain the requested documents and other materials. *Id.,* ¶ 22.

Accordingly, the third discretionary *Intel* factor is met.

### 4. The Discovery Sought Is Not Unduly Intrusive or Burdensome.

SERVOTRONIC'S requests are limited to discrete issues and specific documents, or portions thereof. The requests are narrowly tailored to obtain information regarding the actions taken by Boeing employees in troubleshooting its own aircraft, the investigation Boeing conducted following the Engine fire in the Aircraft on Boeing's premises. All of these requests are relevant and material to SERVOTRONICS'S defense of causation and/or the reasonableness of the settlement. *See generally In re IKB Deutsche Industriebank AG,* No. 09-cv-7852, 2010 WL 1526070 (N.D. Ill. Apr. 8, 2010) Most if not all pertain to documents Boeing has admitted having in its possession or control.

It is respectfully submitted that there is nothing unfair or improper in granting this *ex parte* Application as Boeing will have all available rights under Fed. R. Civ. P. 45(c), and rules applicable to discovery in general (including rules available to protect any information that is proprietary or privileged), when responding to the Subpoena. *See, e.g., In re Heraeus Kulzer GmbH*, No. 3:09-CV-530, 2011 WL 1003588 (N.D. Ill. Mar. 16, 2011) (proceedings following remand from Seventh Circuit).

### CONCLUSION

Based upon the foregoing, the Application should be granted and this Court should issue an Order directing SERVOTRONICS to serve the proffered Subpoena.

Dated: Chicago, Illinois
October 26, 2018

      **DONOHUE BROWN MATHEWSON & SMYTH LLC and CONDON & FORSYTH LLP**

      By: <u>Michael H. Adler</u>
          Michael Adler, one of the attorneys
          for Applicant SERVOTRONICS, INC.

Richard H. Donohue
(ARDC #3124238)
Michael H. Adler
(ARDC #6320198)
140 South Dearborn, Suite 800
Chicago, IL 60603
Tel: (312) 422-0900
Fax: (312) 422-0909

- and –

CONDON & FORSYTH LLP
Stephen R. Stegich, Esq.
Times Square Tower
7 Times Square
New York, New York 10036
Tel: (212) 490-9100
Fax: (212) 370-4453

Attorneys for Applicant
**SERVOTRONICS, INC.**